UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Peter E. Archibald, Jr.

    v.                              Civil No. 04-cv-121-JD
                                           Opinion No. 2005 DNH 129

Russell M. Timmons and
Michael Dumont

O R D E R

Peter E. Archibald, Jr., brings federal civil rights claims and related state law claims against two Somersworth, New Hampshire, police officers, Russell M. Timmons and Michael Dumont, based on their involvement in his arrest following a visitation dispute between Archibald and his former wife. Timmons and Dumont move for summary judgment based on qualified immunity.  Archibald objects.

Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party
opposing a properly supported motion for summary judgment must
present competent evidence of record that shows a genuine issue
for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
256 (1986).  All reasonable inferences and all credibility issues
are resolved in favor of the nonmoving party.  See id. at 255.

Under the local rules of this district, a party filing or
objecting to a motion for summary judgment must file an
accompanying properly supported memorandum of law or a statement
explaining why a memorandum is not necessary.  LR 7.1(a)(2).  In
addition, the supporting memorandum "shall incorporate a short
and concise statement of material facts, supported by appropriate
record citations, as to which [that party] contends" that either
there is no issue to be tried or a genuine factual dispute
exists.  LR 7.2(b).  The defendants failed to include a properly
supported factual statement in their memorandum, although they
submitted supporting materials.  Rather than deny the motion for
failure to comply with the local rule, however, the court will
rely on the factual statement provided by Archibald and will also
consider the materials submitted by all parties.

Discussion

Archibald alleges a federal claim of arrest in violation of the Fourth and Fourteenth Amendments and state law claims of false arrest and malicious prosecution, arising from his arrest and prosecution on a charge under New Hampshire Revised Statutes Annotated ("RSA") § 173-B of violating a protective order.  The defendants, Timmons and Dumont, do not dispute that the mutual stipulation between Archibald and his former wife, Liisa Reiman, was not enforceable under RSA 173-B.[1]  They contend, however, that they are entitled to qualified immunity as to the federal claim and statutory immunity as to the state law claims.

I.  Qualified Immunity

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  Brosseau v. Haugen, 125 S. Ct. 596, 599 (2004).  The First Circuit evaluates qualified immunity in three separate stages.  Torres Rivera v. Calderon Serra, 412 F.3d 205, 214 (1st Cir. 2005).  First, for purposes of summary judgment, the court must determine whether the facts as alleged and taken in the

---

[1]In fact, the defendants characterize Archibald's arrest as "patently unreasonable" but argue that they did not and could not have known that at the time.  Def. Mem. at 6.

3

light most favorable to the plaintiff "show that the officer's conduct violated a constitutional right." <u>Torres-Rivera v. O'Neill-Cancel</u>, 406 F.3d 43, 53 (1st Cir. 2005).  If so, the court next considers whether the constitutional right asserted was clearly established at the time of the alleged violation "such that a reasonable officer would be on notice that his conduct was unlawful."  <u>Id.</u> (internal quotation marks omitted). If the asserted constitutional right was clearly established, the court then decides "whether a reasonable officer, similarly situated, would understand that the challenged conduct violated the clearly established right at issue."[2] <u>Id.</u> (internal quotation marks omitted).

   A.   <u>Allegations of an Unconstitutional Arrest</u>

   The issues in this case arise from a divorce proceeding and visitation dispute between Archibald and Reimann.  Archibald alleges that at the time of the events in question he and Reimann had entered into a temporary stipulation as part of their divorce proceeding.  The stipulation stated in part:  "Except for the purposes of accomplishing visitation, neither party shall have any contact with the other unless specifically authorized by the Court."  Am. Comp. ¶ 12.

---

   [2]The second and third stages are sometimes considered together.  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001); <u>Burke v. Town of Walpole</u>, 405 F.3d 66, 77 n.12 (1st Cir. 2005).

Archibald further alleges that Reimann called him on April 5, 2001, to attempt to resolve a visitation problem and threatened that she would call the police to resolve the problem. Archibald called Reimann back to tell her to stop threatening him.  Reimann then called the Somersworth police to report a violation of the divorce stipulation.

Based on Reimann's complaint, Dumont applied for a warrant for Archibald's arrest, charging a violation of RSA 173–B:8. Archibald alleges that Dumont acted in bad faith in obtaining the arrest warrant.  He contends that Dumont's affidavit in support of the warrant failed to include material details about the visitation dispute.  He also alleges that Dumont's affidavit does not state that the divorce stipulation included a protective order and fails to state what crime Archibald was accused of committing.  Archibald further alleges that Dumont knew that the justice of the peace who issued the warrant lacked the ability to evaluate probable cause and would not question him about the matters stated in the supporting affidavit.  Justice of the Peace Howard Hammond signed the application and the warrant issued the same day.

After becoming aware of the warrant, Archibald and his attorney, Robert Zubkus, went to the Somersworth Police Station the next day, April 6, 2001.  Zubkus told the officers at the station that no protective order pursuant to RSA 173–B or RSA

458:16 was in place and that Archibald's call to Reimann was not a crime.  He also pointed out that the police had cited the wrong statute because RSA 173–B:9(III) rather than RSA 173–B:8 pertained to a violation of a protective order.  Lubkus attempted to explain to Timmons that "there was no authority under these circumstances to arrest the Plaintiff for a violation of RSA 173–B:8 (or 9)."  Am. Comp. ¶ 17.  Despite Lubkus's efforts, Timmons arrested Archibald, and he was prosecuted for violating RSA 173–B:8.  He was found not guilty after a trial on May 8, 2001.

The Fourth Amendment requires that an arrest warrant be based upon probable cause, "supported by Oath or affirmation," which may be satisfied by a police officer's supporting affidavit.  Kalina v. Fletcher, 522 U.S. 118, 129 (1997).  "Probable cause [] exists if the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information would suffice to warrant a prudent person in believing that a person has committed or is about to commit a crime."  Burke, 405 F.3d at 80.  An arrest pursuant to a warrant violates the Fourth Amendment if the application for the warrant lacked probable cause or if the officer applying for the warrant intentionally or recklessly omitted material information or provided false information with reckless disregard for the truth.  Id. at 81.

In the application for the arrest warrant, Dumont stated

that Archibald and Reimann had a temporary stipulation from the Strafford County Superior Court which provided for custody and visitation with their children.  Dumont stated that Archibald violated a protective order when he failed to comply with the visitation requirements in the stipulation and in his interactions with Reimann about that dispute on April 5, 2001. The application was signed by Justice of the Peace Howard Hammond.  Timmons arrested Archibald pursuant to the warrant.

Violation of a mutual stipulation was not a crime. Therefore, despite the Dumont's confusion and regardless of whether his confusion was reasonable, the arrest warrant was not based upon probable cause that Archibald had committed a crime. See, e.g., Wilson v. City of Boston, ––– F.3d –––, 2005 WL 2089860, at *7–*8 (1st Cir. Aug. 31, 2005) (discussing Fourth Amendment requirements).  Further, a plaintiff need only make a colorable claim of a Fourth Amendment violation.  Cox v. Hainey, 391 F.3d 25, 30 (1st Cir. 2004).  Given the plaintiff–friendly standard and the defendants' concession that Archibald's arrest was "patently unreasonable," Archibald has sufficiently shown that a constitutional violation occurred.

### B.  Clearly Established Law

At the second stage, the court determines "whether the right was clearly established at the time of the alleged violation such

that a reasonable officer would be on notice that his conduct was unlawful." Torres Rivera, 412 F.3d at 214.  It is beyond dispute that long before the events in occurred in this case, it was clearly established that the Fourth Amendment required that an arrest warrant be issued only upon probable cause to believe that a crime had been committed.  Cox 391 F.3d at 30.  Therefore, the second stage of the analysis is resolved in favor of Archibald.

       C.   Perspective of Reasonable Officer

       In the last part of the qualified immunity analysis, the court examines the officers' conduct in light of the circumstances that confronted them to determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Groh v. Ramirez, 540 U.S. 551, 563 (2004) (internal quotation marks omitted).  The analysis turns from "abstract principles to the specific facts of a given case." Burke, 405 F.3d at 86 (internal quotation marks omitted).  The court must determine whether each officer's mistake as to the constitutional requirements was reasonable.  Id.

       1.  Officer Dumont.

       Officer Dumont's application for the warrant to arrest Archibald refers to the order issued by the Strafford County Superior Court as both a temporary stipulation order and a

protective order.  He states in his affidavit that the dispute
between Archibald and Reimann was the first time he had
encountered the possibility of criminal charges based on
violation of a mutual restraining order that was part of a
marital stipulation.  Because he was uncertain as to how he
should proceed, he consulted Sergeant Tim McLin at the station
who suggested that he contact Lieutenant Dan Gagne.  McLin talked
to Gagne at his home, and Gagne recommended that they call
Captain Donovan.  Dumont drove to Donovan's home and talked with
him about the situation, showing him the stipulation.  Donovan
thought that Archibald's call to Reimann about her threat to call
the police was a violation of the mutual restraining order but he
was not sure whether it was an offense under RSA 173-B.  Donovan
recommended that Dumont get guidance from the county attorney's
office.

Dumont then called the county attorney's domestic violence
coordinator who contacted the domestic violence prosecutor,
Meegan Lawson.  Lawson called Dumont, and he explained the
situation to her and read her the mutual stipulation part of the
superior court order.  Lawson first told Dumont that the
situation appeared to be a violation of RSA 633:4 pertaining to
interference with custody that would require further
investigation.  She also instructed Dumont to apply for an arrest
warrant for violation of a domestic violence protective order.

Dumont began the process of a warrant application using a computer at the station.  He entered the charge Lawson had approved, and the computer provided the statutory citation, RSA 173-B:8.  Dumont then prepared his affidavit and application for the arrest warrant and presented them to Justice of the Peace Hammond.  Hammond reviewed the materials and approved the application, issuing the arrest warrant.[3]  Dumont had no further involvement in Archibald's arrest.

"[T]he doctrine of qualified immunity provides a safe harbor for a wide range of mistaken judgments."  <u>Hatch v. Dep't for Children, Youth and Their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001).  "An officer is entitled to qualified immunity when his conduct is objectively reasonable based on the information available at the time and in light of clearly established law."  <u>Pena-Borrero v. Estremeda</u>, 365 F.3d 7, 14 (1st Cir. 2004).  An officer who prepares a plainly invalid warrant that a reasonably competent officer would know was deficient, however, is not entitled to immunity, despite the approval of the warrant by a magistrate.  <u>Groh</u>, 540 U.S. at 563-64.

---

[3]Archibald's opinion of Hammond's incompetence is given little weight in the absence of any evidence of bias or incompetence.  <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984).  Although Archibald charges that Dumont omitted material information from the warrant application by failing to include a copy of the stipulation, given the undisputed confusion concerning the import of the stipulation, Archibald has not shown that the omission was material.  <u>Id.</u>

Advice of a prosecutor that probable cause exists to support an arrest warrant does not guarantee qualified immunity for the officer.  Cox, 391 F.3d at 35.  The weight to be given to a pre-arrest consultation depends on "whether the officer's reliance on the prosecutor's advice was objectively reasonable."  Id. Objective reasonableness is determined by assessing whether the officer had reason to believe the advice he was given was not trustworthy and whether the officer's conduct, such as withholding material facts, affected that advice.  Id. at 35-36.

Dumont's efforts to get help in making a decision about what action should be taken in response to Reimann's complaint are important here.  Contrary to Archibald's argument, the record does not show that Dumont omitted material information in his discussions with his supervisors and with Lawson.  The record also does not show any reason Dumont should not have trusted Lawson's advice, making his reliance on her advice pertinent to the qualified immunity analysis.[4]

Several mistakes led to Dumont's decision to apply for an arrest warrant in this case.  He and others misunderstood the nature of the temporary stipulation, mistakenly thinking it was a protective order enforceable under RSA 173-B.  The computer

---

[4]Archibald's opinion about what police officers knew as to the operation of RSA 173-B is not persuasive in light of the affidavits submitted by the county attorneys.

provided the wrong statutory reference for a violation of a protective order.  Then, although Dumont apparently believed that Archibald's call to Heimann was a violation of the stipulation, he did not clearly state that conduct as the criminal act in his affidavit.

Taking the circumstances as a whole and giving appropriate weight to Dumont's consultations with his superiors and Lawson, the record shows that his actions were neither obviously inconsistent with Archibald's Fourth Amendment rights nor objectively unreasonable.  See Cox, 391 F.3d at 31.  Dumont is entitled to qualified immunity on the federal claim against him.

### 2.  Officer Timmons.

Officer Timmons arrested Archibald on April 6, 2001, after Archibald and his attorney, Robert Zubkus, arrived at the Somersworth Police Station.[5]  Archibald states in his affidavit that Zubkus talked with Timmons and the police prosecutor, Brian Lemoi, about the warrant and told them that they could not

---

[5]Timmons did not provide his affidavit in support of the motion for summary judgment.  Instead, counsel refers to "two previous affidavits of Russell Timmons" without any indication as to when those affidavits were filed or with which documents or pleadings.  The court has located affidavits submitted by Timmons in support of a previous unsuccessful motion and has reviewed them.  Counsel would be well advised to provide the court with a complete record to be considered in support of a motion for summary judgment.

enforce the civil stipulation in Archibald's and Reimann's temporary stipulation.  He explained that it was not a criminal matter and urged them to contact the County Attorney, Janice Rundles, to get her opinion before making an arrest under the warrant.  Lemoi declined to call Rundles.

In the meantime, despite Zubkus's protests, Timmons took Archibald to the booking area and began the booking process. Timmons called Lemoi to see if Zubkus had provided any information that would change their plan to arrest and book Archibald on the outstanding warrant.  Lemoi told Timmons to continue with the booking procedure.  Timmons finished booking Archibald at noon, and Archibald appeared before Judge Coolidge for arraignment and bail immediately after lunch.

"When officers make an arrest subject to a warrant, then, even if probable cause is lacking, officers are entitled to qualified immunity unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable."  Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (internal quotation marks and footnote omitted); accord Burke, 405 F.3d at 87; see also Simms v. Village of Albion, 115 F.3d 1098, 1106 (2d Cir. 1997).  Archibald argues that Timmons acted unreasonably because he was on notice that the

warrant was invalid once Zubkus pointed out its defects.[6]  An
arresting officer, however, is not obligated to accept arguments
made by a suspect's lawyer.  Morrell v. Mock, 270 F.3d 1090, 1101
(7th Cir. 2001).  Archibald also argues that Timmons should have
further investigated the legal requirements of the statute cited
in the warrant.  Absent proof of the invalidity of the warrant,
an officer executing an arrest warrant "'is not required by the
Constitution to investigate independently every claim of
innocence . . . .'"  Pena-Borrero v. Estremeda, 365 F.3d 7, 13
(1st Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 145-46
(1979)).

Therefore, based on the record presented for summary
judgment, Timmons is entitled to qualified immunity from
liability for arresting Archibald pursuant to the arrest warrant.


II.  Supplemental Jurisdiction

With this decision, all of Archibald's federal claims have
been resolved against him.  Subject matter jurisdiction in this

---

[6]The mis-cited statute did not make the warrant facially
invalid.  Mere typographical or clerical errors do not render a
warrant invalid.  See, e.g., Groh, 540 U.S. at 558; Wilkes v.
Young, 28 F.3d 1362, 1364 n.1 (4th Cir. 1994).  In contrast,
substantive errors or omissions, such as failure to list persons
or items to be seized or a lack of an oath or affirmation to
support probable cause, make the warrant plainly defective.  See
Groh, 540 U.S. at 557; United states v. Vargas-Amaya, 389 F.3d
901, 904 (9th Cir. 2004).

case is based on the existence of a federal question.  <u>See</u> 28
U.S.C. § 1331 & § 1367(a).  Because Archibald's federal claims
are now either dismissed by stipulation or resolved in favor of
the defendants by summary judgment, the court declines to excise
supplemental jurisdiction over Archibald's state law claims.  <u>See</u>
§ 1367(c)(3); <u>Gonzalez–De–Blasini v. Family Dep't</u>, 377 F.3d 81,
89 (1st Cir. 2004).

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for
summary judgment (document no. 27) is granted, which resolves the
remaining federal claims in favor of the defendants.  The
plaintiff's state law claims are dismissed without prejudice.
The clerk of court shall enter judgment accordingly and close the
case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

September 13, 2005

cc:  John A. Curran, Esquire
     Kenneth D. Murphy, Esquire


15